IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TYLER DANE BLANCHARD,

          Plaintiff,

v.                                                      Case No. 24-2290-JWB

JOANN WOLTMAN and
LELAND DUDEK, *Acting
Commissioner of Social Security
Administration*,

          Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motions to dismiss. (Docs. 12, 13.) The motions are fully briefed and ripe for decision.[1] (Docs. 12, 14, 17, 20.) The motions are GRANTED for the reasons stated herein.

**I.  Facts**

The matter before the court stems from Plaintiff's child custody proceedings. (Doc. 14-1.)[2] Judge Joann Woltman is a judge in the District Court of Johnson County, Kansas. (*Id.*) She is presiding over Plaintiff's child custody proceedings. (*Id.*) Plaintiff takes issue with her handling of the child custody matter. Judge Woltman issued an order shortly after Plaintiff commenced the matter before this court. (*See id.*) The order provides context for why it appears Plaintiff is disgruntled with the state proceedings. Judge Woltman held Plaintiff in contempt for failing to

---

[1] Defendants did not file reply briefs, and the time to do so has now passed.
[2] Although this case is before the court on Defendants' motions to dismiss, the court may take judicial notice of public records in deciding a motion to dismiss when those records concern matters that bear directly upon the disposition of this case. *Hodgson v. Farmington City*, No 16-4120, 675 F. App'x 838, 840–41 (10th Cir. Jan. 10, 2017). Thus, the court takes judicial notice of Judge Woltman's order from July 10, 2024, (Doc. 14-1), Plaintiff's petition for writ of mandamus, (Doc. 14-4), the Kansas Supreme Court's orders regarding Plaintiff's petition for writ of mandamus, (Docs. 14-5, 14-6), and the accompanying appellate record for the mandamus petition, (Doc. 14-3).

1

comply with all of her previous orders, (*id.* ¶ 11), ordered him to pay child support, (*id.* ¶ 15.b), adopted a parenting plan rendering the mother in sole custody of the children, (*id.* ¶ 15.c), ordered his income to be withheld in order to pay for child support, (*id.* ¶ 15.f), and ordered him to provide medical insurance for the children. (*Id.* ¶ 15.h.) Plaintiff also filed a petition for writ of mandamus with the Kansas Supreme Court regarding an order from Judge Woltman issued June 20, 2024. (*See* Doc. 14-4 at 3; Doc. 14-3.) The Kansas Supreme Court denied Plaintiff's mandamus petition and his request for a reconsideration of the denial. (Doc. 14-5; Doc. 14-6.)

Plaintiff's federal action is against both Judge Woltman and the Commissioner of the Social Security Administration (the "Commissioner"). His complaint provides little to no context of what has factually occurred in the child custody proceedings. Instead, Plaintiff jumps straight into making allegations of general misconduct and unconstitutional conduct—some very general and some directed toward the individual Defendants. Plaintiff's complaint is 119 pages. It is difficult to follow. Although many of his allegations of misconduct are interspersed throughout the complaint, he distinguishes nine claims. Two are directed toward the Commissioner, four are directed toward Judge Woltman, and the three remaining claims are general grievances about how the Kansas family law statutes (i.e., K.S.A. § 23-2101 *et. seq.*) violate the Constitution. (*See* Doc. 1 at 17–20.)

Both Defendants filed motions to dismiss Plaintiff's claims against them. The Commissioner argued that Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction, or in the alternative, for failure to state a plausible claim. (*See* Doc. 12 at 1.) Judge Woltman argued Plaintiff's complaint should be dismissed for both lack of subject matter jurisdiction and failing to state a plausible claim. (*See* Doc. 14 at 1.) The court addresses each motion in turn.

**II.     Standard**

"Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). When the court is faced with a motion invoking both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits of the case under Rule 12(b)(6). *Bell v. Hood*, 327 U.S. 678, 682 (1946). Because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to support its claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

Plaintiff is also proceeding pro se. As a general rule, a pro se litigant's pleadings are to be "construed liberally" and held to a "less stringent standard" than pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, a court must not become an advocate for a pro se litigant. *See id.* Additionally, a court cannot discover new facts for the

3

plaintiff nor "construct a legal theory . . . that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989). Put differently, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110

**III.  Analysis**

   **A.  Commissioner of the Social Security Administration**

Plaintiff's claims three and five are against the Commissioner. Plaintiff asserts in Claim three that the Commissioner is liable for any unconstitutional conduct pursuant to Kansas' family law statutes (K.S.A. § 23-2101 *et. seq.*) because Title IV-D of the Social Security Act requires states to meet certain standards and criteria in their child support enforcement programs to receive federal funding.[3] (*See* Doc. 1 at p. 18.) Later in Plaintiff's complaint, he argues that the Commissioner helped create Kansas's family law statutes, and subsequently, assists in administering them. (*Id.* ¶ 31.) He asserts in claim five that the Commissioner is unconstitutionally manipulating state law under color of federal law to maximize the federal government's pecuniary interests. (*Id.* at p. 19.) According to Plaintiff, the Commissioner furthers the federal government's pecuniary interests by seizing property in violation of the Fourth Amendment. (*See id.*)

The Commissioner argues that Plaintiff's claims three and five should be dismissed because he cannot establish standing. The party invoking federal jurisdiction bears the burden of establishing that they have standing to bring a claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). There are three elements to establish standing: "(1) injury in fact, (2) causation, and (3)

---

[3] Plaintiff does not clearly assert that the Commissioner violates the Constitution via enforcing the Title IV-D funding criteria. However, the court believes that is Plaintiff's claim. *See Kansas v. United States*, 214 F.3d 1196, 1198 (10th Cir. 2000) (discussing the funding process under Title IV-D of the Social Security Act).

redress[a]bility." *ACLU of N.M. v. Santillanes*, 546 F.3d 1313, 1317 (2008). The Commissioner asserts that Plaintiff failed to establish causation and redressability. (Doc. 12 at 10, 11.)

Regarding the element of causation, the Commissioner asserts Plaintiff named the wrong defendant, so there is no causal connection between the Commissioner and Plaintiff's alleged injuries. Defendant Commissioner is correct that Plaintiff named the wrong defendant. It is the Secretary of the U.S. Department of Health and Human Services who implements state plans under Title IV-D—not the Commissioner. *Howe v. Ellenbecker*, 774 F. Supp. 1224, 1227 (D.S.D. 1991), *aff'd*, 8 F.3d 1258 (8th Cir. 1993) (citing 42 U.S.C. § 652). And the element of causation requires that "the injury has to be 'fairly … trace[able] to the challenged action of the defendant . . . .'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted) (alteration in original). Because Plaintiff named the wrong defendant, he cannot establish that the Commissioner caused any of the injuries he complains of. Hence, Plaintiff has not established the element of causation.

However, even if Plaintiff had named the correct defendant and set forth facts to establish causation, his standing would falter under both the injury-in-fact and redressability elements.

The Commissioner explicitly argues that a judicial decision will not redress Plaintiff's alleged harms. (Doc. 12 at 11.) However, based on the Commissioner's briefing, he also appears to assert that Plaintiff cannot establish an injury-in-fact: "Plaintiff seeks only prospective relief and relies upon some nebulous and continuing injury . . . ." (Doc. 12 at 11.) Upon review of Plaintiff's lengthy and convoluted complaint, the court cannot determine if he suffered a legally cognizable injury. There are references to a Fourth Amendment violation for failing to hold a pre-deprivation hearing, but Plaintiff fails to provide context for that allegation nor how the Commissioner could be involved. (*See e.g.*, Doc. 1 ¶ 56.) Plaintiff also asserts that the Commissioner is legally mandated to assist states with crafting, approving, and auditing paternity

5

and child support statutes. (Doc. 1 ¶ 69.) Again, Plaintiff makes this assertion without providing the court with an injury. He later states that Title IV-D of the Social Security Act violates his First Amendment rights by curtailing his ability to speak with his kids. (*Id.* ¶¶ 103, 104, 106.) Again, this is a conclusory allegation without sufficient context. Thus, he fails to establish a legitimate injury-in-fact. As for redressability, Plaintiff only requests prospective relief in the form of a declaratory judgment and an injunction for his claims against the Commissioner. (*See id.* ¶¶ 217, 219.) He would also like the Commissioner to provide Constitutional protections for any state statute he certifies. (*Id.* ¶ 56.) However, because Plaintiff failed to allege a past or continuing injury, the court *cannot* redress an injury through a favorable decision.[4] Hence, Plaintiff failed to carry his burden of establishing both the injury-in-fact and redressability elements.

Therefore, the Commissioner's motion to dismiss is granted because the court concludes that Plaintiff lacks standing to assert his claims against this Defendant. The court reiterates that had Plaintiff properly filed his claims against the Secretary of Health and Human Services, the same rationale would apply and there would likely be no difference in the outcome.

**B.     Judge Woltman**

Defendant Judge Woltman does not address Plaintiff's individual claims against her. Rather, she asserts that the *Younger* abstention doctrine[5] precludes the court from exercising jurisdiction over his claims, or alternatively: (1) she cannot be liable for damages under 42 U.S.C. § 1983 in an official or individual capacity because of sovereign and judicial immunity, (2)

---

[4] Plaintiff's response (Doc. 20) to the Commissioner of SSA's motion to dismiss only furthers confusion about his injuries and claims. It is 172 pages long, well beyond the authorized maximum length for a response. D. Kan. Rule 7.1(d)(2). Plaintiff does not respond to the Commissioner's arguments; instead, he reasserts similar unclear allegations of unconstitutional conduct.

[5] Plaintiff also argues that *the Rooker-Feldman* doctrine negates the court's subject matter jurisdiction. (*See* Doc. 14 at 10.) However, as will be subsequently discussed, because Plaintiff's federal claims relate to ongoing state court proceedings, the *Rooker-Feldman* doctrine is inapplicable and the court focuses its analysis on Plaintiff's reliance on the *Younger* abstention doctrine.

6

Plaintiff failed to allege facts that demonstrate he is entitled to injunctive relief under § 1983, and (3) the court should exercise its discretion and refuse to grant declaratory relief in his favor. Before assessing Judge Woltman's alternative arguments for dismissal, the court will first address whether the *Younger* abstention doctrine precludes it from exercising jurisdiction over Plaintiff's claims.

   1. Younger *Abstention Doctrine*

Judge Woltman asks the court not to exercise jurisdiction over Plaintiff's claims against her because such rulings would interfere with pending state court proceedings. (Doc. 14 at 11–12.) Plaintiff's broad allegation in his complaint is that the statutory scheme governing Kansas family law (K.S.A. § 23-2101 *et. seq.*) is unconstitutional. (*See* Doc. 1 at p. 18.) He then alleges that Judge Woltman violated equal protection guarantees and substantive rights through issuing orders based on K.S.A. § 23-2101 *et. seq.* (*See id.* at p. 18–19.) He also alleges that Judge Woltman is exercising equitable authority unconstitutionally and imposing discovery deadlines that violate his constitutional rights. (*Id.* at 19–20.) Plaintiff's allegations against Judge Woltman relate back to an ongoing civil proceeding concerning child custody. Accordingly, the court concludes that jurisdiction is precluded by the *Younger* abstention doctrine.

Under that doctrine, a federal district court must abstain from hearing a federal case when: 1) a state criminal, civil, or administrative proceeding is pending; 2) the state court provides an adequate forum to hear the claim raised in the federal complaint; and 3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies. *Phillips v. Martin*, 315 F. App'x 43, 44 (10th Cir. 2008) (citation omitted). Additionally, the reference point for determining if a plaintiff filed his federal complaint during an ongoing state proceeding is the filing date of the complaint. *Dauwe*

7

*v. Miller*, 364 F. App'x 435, 437 (10th Cir. 2010) (citing *Bettencourt v. Bd. of Registration In Med.*, 904 F.2d 772, 777 (1st Cir. 1990)).

Here, Plaintiff filed his federal complaint on July 3, 2024. (Doc. 1.) Judge Woltman issued an order in the state custody proceedings that give rise to Plaintiff's claims on July 10, 2024. (Doc. 14-1.) Thus, there is no question that the state proceedings were ongoing at the time Plaintiff filed his complaint in federal court. His federal claims also derive from his child custody proceedings. According to the Tenth Circuit, domestic relations involving husband and wife, parents and children, and relatedly, child custody disputes implicate important state interests. *See Wideman v. Colorado,* 242 F. App'x 611, 614 (10th Cir. 2007). Lastly, Plaintiff has not demonstrated why Kansas state court is an inadequate forum to raise his claims. Rather, his conduct actually denotes that it is an adequate forum because he filed a petition for writ of mandamus with the Kansas Supreme Court; therein, Plaintiff raised constitutional concerns regarding a June 20, 2024, order from Judge Woltman. (See Doc. 14-4.) The Tenth Circuit has determined that the use of a state forum to raise constitutional matters demonstrates that it is an adequate forum to address those concerns. *See Wideman*, 242 F. App'x at 614. Therefore, the *Younger* abstention doctrine applies to Plaintiff's claims against Judge Woltman, and the court lacks subject matter jurisdiction to address them.[6]

In the alternative, as discussed in the subsequent sections, Plaintiff's claims against Judge Woltman are subject to dismissal on the basis of immunity and for failing to allege facts that demonstrate he is entitled to prospective relief under § 1983.

---

[6] If the *Younger* abstention doctrine applies to § 1983 case, a district court should dismiss the case on the basis of *Younger* even if the plaintiff requests both money damages and equitable relief. *See ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1008–09 (D.N.M. 2021) (citing *Wideman,* 242 F. App'x at 614) (discussing how the Tenth Circuit in *Wideman* affirmed a district court's ruling that *Younger* required it to abstain from hearing a § 1983 case wherein the plaintiff sought both money damages and injunctive relief).

*2. 42 U.S.C. § 1983 Claims*

Plaintiff requests damages against Judge Woltman in both her official and individual capacity pursuant to 42 U.S.C. § 1983. (Doc. 1 ¶¶ 5, 261.) Judge Woltman argues that sovereign immunity under the Eleventh Amendment bars Plaintiff's request for damages against her in an official capacity. Additionally, she asserts that the doctrine of judicial immunity bars Plaintiff's request for damages against her in a personal capacity.

First, Judge Woltman is a state official, and any action against her for money damages in her official capacity is barred by the Eleventh Amendment. *Sigg v. Dist. Ct. of Allen Cnty.*, No. 11-2625-JTM, 2012 WL 941144, at *4 (D. Kan. Mar. 20, 2012) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006)) (discussing how retroactive damages claims against state officials in their official capacity constitute claims against the state and are barred by sovereign immunity). Plaintiff is not clear whether he is seeking to recover damages against Judge Woltman in her official capacity; but to the extent that he is, the Eleventh Amendment bars such remedy.

Second, under the doctrine of absolute judicial immunity, Judge Woltman is immune from civil liability in her individual capacity when she is "carrying out judicial functions." *See id.* Indeed, a judicial officer is absolutely immune for their judicial acts or functions unless they were taken in a clear absence of jurisdiction. *See Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). Judicial functions are "those acts performed by a judge when the parties deal with the judge in her judicial capacity." *Sigg*, 2012 WL 941144, at *4. And to determine if a judge acted in clear absence of jurisdiction, the courts must analyze "whether at the time [a judge] took the challenged action he had jurisdiction over the subject matter before him." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). The example the Supreme Court gives of a judge acting in clear absence of jurisdiction is a probate judge presiding over a criminal matter. *See id.* n.7.

9

Thus, to defeat judicial immunity, Plaintiff could demonstrate that he is suing Judge Woltman for non-judicial acts or that she did not have jurisdiction over family law matters because he takes issue with her order in a child custody dispute. (*See* Doc. 14-1.)

Plaintiff fails to allege facts supporting either theory. Construing his complaint liberally, the court believes he is trying to argue that Judge Woltman was either (a) no longer carrying out judicial functions or acts when she issued her July 10th order, or (b) is carrying out judicial functions in a clear absence of jurisdiction because her order is pursuant to an unconstitutional law. Plaintiff cannot sustain a claim against Judge Woltman for engaging in non-judicial functions. His complaint is premised upon her capacity as a judge presiding over child custody proceedings involving himself. He also cannot dispute that Judge Woltman is a judge in Johnson County and has jurisdiction over a family law dispute in Johnson County District Court. Plaintiff has also failed to demonstrate how Judge Woltman could have acted in complete absence of jurisdiction. In his complaint, he proffers only conclusory assertions about the unconstitutionality of a statutory scheme or senseless constitutional claims relating to the Fourth Amendment and the Equal Protection Clause. Hence, because Plaintiff has not stated a plausible claim that Judge Woltman acted outside of her judicial functions or completely without jurisdiction, she is immune from civil liability in an individual capacity as well.

Therefore, Plaintiff's claims against Judge Woltman for damages in either her official or individual capacity can be dismissed on immunity grounds.

3. *Injunctive Relief*

Pursuant to § 1983, Plaintiff also requests multiple injunctions against Judge Woltman.[7] (*See* Doc. 1 ¶¶ 217, 257.) However, Plaintiff may only seek injunctive relief against Judge

---

[7] Plaintiff does not explicitly state that § 1983 serves as the statutory mechanism for his requested injunctive relief. However, Plaintiff references § 1983 in paragraph five of his complaint—the paragraph in which he identifies why

10

Woltman for actions taken in her official capacity[8] and when "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see Lawrence v. Kuenhold*, 271 F. App'x 763, 766 n.6 (10th Cir. 2008). Plaintiff does not allege Judge Woltman violated a declaratory decree when she issued her order. He also failed to allege any facts that indicate declaratory relief was unavailable. Therefore, any claims for injunctive relief against Judge Woltman are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

  *4. Declaratory Judgment*

  Lastly, Plaintiff requests multiple declarations from this court—some of which are applicable to Judge Woltman's order and her official acts as a judge. (*See* Doc. 1 ¶¶ 217, 256, 259.) Judge Woltman argues that the court should exercise its discretion by not issuing declaratory relief. (*See* Doc. 14 at 9.)

  The court does not disagree with Judge Woltman regarding its discretionary authority to issue a declaratory judgment. After all, the Supreme Court has noted that the use of the word "may" in the Declaratory Judgment Act "confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980 (10th Cir. 2012) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). However, the court need not address Judge Woltman's discretionary argument because the Declaratory Judgment Act requires that there be an actual case or controversy for the court to decide when issuing a declaratory judgment. *See* 28 U.S.C. § 2201.

---

the court has jurisdiction over his claims. (Doc. 1 ¶ 5.) Section 1983 is not a jurisdictional statute, *see Tyler v. Russel*, 410 F.2d 490, 491 (10th Cir. 1969), but it does provide the cause of action for retroactive and prospective relief when actors under color of state law violate a person's constitutional and federal statutory rights. *Barnet v. Marriott*, 526 F. Supp. 3d 1073, 1078 (10th Cir. 2021). Thus, in liberally construing Plaintiff's complaint, the court concludes that he is seeking an injunction against Judge Woltman via § 1983.

[8] Plaintiff cannot seek injunctive or declaratory relief against Judge Woltman in her individual capacity under § 1983. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011).

11

Plaintiffs' requests for declaratory judgment against Judge Woltman are devoid of merit. His claims for declaratory relief against Judge Woltman appear based on her enforcement of the family law section of the Kansas Statutes (K.S.A. § 23-2101 *et. seq.*). The court has already determined that Plaintiff has failed to sufficiently plead why K.S.A. § 23-2101 *et. seq.* is unconstitutional. And his response to Judge Woltman's motion to dismiss does not clarify his claims or requests for relief.[9] He simply has not established in his complaint an actual controversy that this court needs to adjudicate. Thus, had *Younger* not precluded jurisdiction, the court could have exercised its discretion by not issuing a declaratory judgment against Judge Woltman.

## IV. Conclusion

THEREFORE, the court GRANTS both the Commissioner's and Judge Woltman's motions to dismiss. All claims against the Commissioner and Judge Woltman are accordingly DISMISSED. Because no defendants remain, the court DISMISSES Plaintiff's remaining claims that are not directed toward any individual defendant. Plaintiff's motion seeking an emergency preliminary injunction, (Doc. 26), is hereby DENIED AS MOOT.

IT IS SO ORDERED. Dated this 27th day of March, 2025.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

[9] His response is 172 pages. It does not clarify his convoluted complaint; rather it only furthers confusion. For example, instead of responding to Judge Woltman's argument, he makes conclusory allegations against her, one of which is for serving as a political authority instead of a judicial one. (*See e.g.*, Doc. 20 at p. 5.)